UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                        Case No. 06-CR-215

LAWRENCE BUTLER,

      Defendant.

_____

**ORDER**

On November 11, 2006, a grand jury sitting in this district returned a four count indictment charging Lawrence Butler ("Butler") and seven co-defendants with drug-related offenses. Specifically, Butler is charged in counts one and two of the indictment with violations of 21 U.S.C. §§ 841 and 846. Butler was arraigned on these charges on November 16, 2006, and entered a plea of not guilty to both counts. Butler filed several pretrial motions, requesting an order to compel the government to disclose the identity of all unnamed or confidential informants; and also a motion for a bill of particulars, and a motion to suppress evidence. Magistrate Judge William E. Callahan, Jr. issued a recommendation that Butler's motion to suppress be denied and ordered denial of his motion to compel disclosure of confidential informants and motion for a bill of particulars. Butler filed a timely objection to the recommendation and order, and the government has filed a response. For the reasons set forth below, Magistrate Callahan's recommendation will be adopted, and Butler's motion to suppress, motion to disclose informants, and motion for a bill of particulars will be denied.

**ANALYSIS**

Butler objects to the magistrate's recommendation and order on three grounds. First, Butler objects to Magistrate Callahan's order denying his motion to disclose confidential informants. Butler also objects to the recommendations' denial of his motion for a bill of particulars; and finally, Butler objects to the recommendation that his motion to suppress should be denied. Additionally, Butler argues that the aggregate result of these denials deprive him of his due process rights and the right to prepare a defense free from governmental intrusion.

**I.    Disclosure of Confidential Informants**

Butler first objects to the magistrate's finding that the government should not be required to immediately disclose the identity of the confidential informants. His motion requested immediate disclosure of all confidential informants, and the government responded that although it would not immediately disclose all informants, it would disclose those being called to testify at trial not less than 30 days prior to the commencement of trial. Butler, finding this accommodation insufficient, objected to the magistrate's order.

As a general rule, the government enjoys a limited privilege of withholding the identity of an informant. *United States v. Bender*, 5 F.3d 267, 269 (7th Cir.1993). This "confidential informant privilege" protects from disclosure an informant's identity and his communications with the government that may tend to reveal his identity. *See id.* This privilege encourages citizens to perform their obligation to communicate their knowledge of the commission of crimes to law enforcement officials by

preserving the informant's anonymity. *United States v. Jefferson,* 252 F.3d 937, 940 (7th Cir. 2001). Nevertheless, the government's privilege is not absolute. A defendant can overcome the confidential informant privilege by demonstrating a need for the information, but he bears this burden in the face of a presumption that the privilege should apply. *See Bender,* 5 F.3d at 270 (stating defense counsel must establish that the defendant "possesses a genuine need of informant disclosure that outweighs the public's interest"). The Supreme Court has held that a court must balance the defendant's request against the government's interest; particularly considering "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors" in determining if ordering disclosure is appropriate. *Roviaro v. United States*, 353 U.S. 53, 62 (1957); *see also United States v. Valles,* 41 F.3d 355, 359 (7th Cir. 1994). A court should also consider the informant's role in the crime; that is, whether or not the informant was actively involved and was a "transactional witness" to the crimes and events, or if the informant was a mere "tipster." *Bender*, 5 F.3d at 270.

In considering the first relevant factor set forth in *Bender,* the court finds compelling the Seventh Circuit's comment that the public's interest in "protecting the free flow of information is strong" in drug cases. *Bender,* 5 F.3d at 270. The *Bender* court reasoned that "not many people want to become police informants in light of the violence within the drug subculture[;] [d]rug dealers are not known for treating informers with compassion." *Id.* Thus, the court notes at the outset that due to the nature of this case, a multi-defendant heroin conspiracy case, the government's

interest in maintaining the confidentiality of the informants is high. Indeed; in the government's response to Butler's motion, it specifically stated that it "has masked the identities of most of the individuals who have provided information or cooperated during this investigation . . . [and] has done so out of fear for the safety of these individuals." (Gov't. Resp. 3.)

Furthermore, the court finds that the magistrate correctly denied Butler's motion because Butler's motion did not provide sufficient information or factors to overcome the presumption that the government's privilege applies. *Valles*, 41 F.3d at 358. Butler's original motion argues that a primary issues in this case was whether or not there was a conspiracy, and therefore the informants must be disclosed to resolve this factual dispute. Butler argues that to determine if a conspiracy existed or who was a member of the alleged conspiracy, it is necessary to disclose

> persons who were present at meetings, or who knew members of the conspiracy, or who were victims of crimes committed by person [sic] believed to be part of the conspiracy, [because] all possess information that is critically important to the determination of the nature of the conspiracy and the names of the individuals who were part of it.

(Butler's Mot. 7.) The court disagrees with Butler's position and notes that the Seventh Circuit has traditionally held that the government's privilege is not overcome when a defendant seeks disclosure of informants that are indirectly or peripherally involved with the crimes charged. *See United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985) (holding that no disclosure was required of an informant who instigated an investigation of the defendant but was not present at transactions

alleged in indictment); *see also United States v. Dorsey*, 2006 WL 2192040 *2 (E.D. Wis. 2006) (denying a motion to disclose confidential informants when the informant did not take part in any drug transactions or have any face-to-face dealings with the defendant). This would be particularly true in Butler's cases where he seeks disclosure of such a wide group of individuals, including victims who would likely not even have been involved in the crimes. "The confidential informant privilege will not yield to permit a mere fishing expedition, nor upon bare speculation that information may possibly prove useful." *Valles*, 41 F.3d at 358 (quoting *Doles v. Local 1942, Int'l Bhd. of Elec. Workers*, 870 F.2d 368, 373 (7th Cir. 1989).

Moreover, it's unlikely that such information would even prove helpful if Butler chooses to argue that no conspiracy existed as part of his defense. To establish that a conspiracy existed under 21 U.S.C. § 846, the government must show that (1) two or more individuals agreed to commit an unlawful act, and (2) the defendants knowingly and intentionally joined in the agreement. *See, e.g., United States v. Hicks*, 368 F.3d 801 (7th Cir. 2004). Thus, it appears that it would be far more relevant to investigate Butler's dealings with the co-defendants in this case if he chooses to take this line of defense.

Butler's motion for disclosure also argues that the informants are intimately involved in the heroin distribution ring, and are accurately called "transactional" witnesses, thereby requiring disclosure of their identities. Butler attached two exhibits to his motion, and each were debriefings of confidential informants. In the first, the informant could not even supply Butler's name. This, the court finds, is inconsistent

-5-
Case 2:06-cr-00215-JPS    Filed 08/01/07    Page 5 of 20    Document 139

with Butler's assertion that the confidential informant was so intimately involved in the alleged conspiracy that he must be disclosed. Furthermore, the second debriefing Butler attached only peripherally mentions his name; this too does not show that the confidential informant's involvement was so significant that he or she ought be disclosed. In sum, Butler's exhibits actually belie his argument that the informants were transactional and closely-related informants and must be disclosed. Based upon the paucity of information Butler has provided in an attempt to show that the informants were transactional witnesses, the court finds that he has not met his burden necessary to overcome the government's confidential informant privilege. Thus, the court is constrained to adopt the magistrate's order and deny Butler's motion to disclose confidential informants as he has not shown that disclosure would be "relevant and helpful" to his defense, nor that disclosure is "essential to a fair determination" of his case. *Jefferson*, 252 F.3d 941.

## II.  Motion for a Bill of Particulars

Butler also moved for a bill of particulars "as to the conduct of Lawrence Butler that the government believes establishes that he was a member of the conspiracy." (Butler Mot. 1.) Magistrate Callahan denied this motion, and Butler objected stating that this denial "put him in a position of simply having to sit back and wonder who the government's witnesses will be, what these witnesses will testify to, and how that testimony will implicate Butler as being part of a conspiracy to deliver heroin." (Butler's Obj. 5.) Butler also argued that the combined denials of the motion for a bill of particulars and motion to disclose informants does not allow for adequate

-6-
Case 2:06-cr-00215-JPS    Filed 08/01/07    Page 6 of 20    Document 139

preparation of his defense. The court finds, as did Magistrate Callahan, that the information sought by Butler is inappropriate for an order for a bill of particulars, and for the reasons set forth below, Butler's objection is overruled and his motion for a bill of particulars will be denied.

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may move for a bill of particulars. The function of a bill of particulars is "to provide [the] defendant with information about the details of the charge against him or her if this is necessary to the preparation of the defense, and to avoid prejudicial surprise at trial." 1 C. Wright, Fed. Prac. & Proc. Crim. 3d § 129 (2007). The test for determining whether a bill of particulars should issue is "whether the indictment . . . sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Serola*, 767 F.2d 364, 370 (1985) (quoting *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981)). This standard is satisfied when an indictment "sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

Butler has been charged at counts one and two of the indictment, and each of these counts charge drug-related offenses, in violation of 21 U.S.C. §§ 841 and 846. At count one the indictment states that from December 2004 through September 12, 2006, Butler, along with several co-defendants, knowingly and intentionally conspired with one another to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). Count one also states, with a sufficient specificity,

the drug amounts involved in the offense; the purposes and functions of the individuals charged with the conspiracy; and the distribution and sale structures of the organization. (*See* Indictment ¶¶ 1-8, Docket # 1.) Thus, at the outset, the court notes that the indictment clearly conforms with Rule 7 and the requirements articulated in *Fassnacht*; furthermore, the Seventh Circuit has held that an indictment under 21 U.S.C. § 841 need only allege the conspiracy to distribute drugs, the time frame in which it allegedly operated, and the statute violated. *See United States v. Roman*, 758 F.2d 846, 851(7th Cir. 1984). Despite the indictment's sufficiencies, Butler argues that it would be nearly impossible to prepare a defense because the evidence described by the confidential informants does not describe Butler's role in the offense. However, this request falls squarely outside of the purpose of a bill of particulars and was properly denied by the magistrate. The defendant is not entitled to discover, through a bill of particulars, the evidentiary details of the government's case. *United States v. Glecier*, 923 F.2d 496, 501-02; *United States v. Brock*, 863 F. Supp. 851, 857 (E.D. Wis. 1994). It is readily apparent that information relating to how the government plans to prove that Butler was a member of the conspiracy are clearly "evidentiary details" that are not appropriately disclosed through a bill of particulars. *See Glecier*, 923 F.2d at 502; *see also United States v. Knowles*, 2 F. Supp. 2d 1135 (E.D. Wis. 1998).

Furthermore, the court finds that the indictment supplies sufficient information in regards to Butler's alleged role in the conspiracy and the acts he performed. For example, at paragraphs five through seven in the indictment, it states the various

roles and jobs Butler performed in furtherance of the conspiracy; transporting, repackaging, and selling the heroin. (*See* Indictment ¶¶ 5-7.) In light of the clarity of the indictment and adequate factual information connecting Butler to the conspiracy, the court finds that a bill of particulars is unnecessary. *See United States v. Caputo*, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (stating that where the indictment provided detailed information as to the defendant's conduct, such information was sufficient in understanding the conspiracy's scope). Butler is entitled to know the offense with which he is charged, but he is not entitled to know the details of how it will be proved. *Fassnacht*, 332 F.3d at 446 (quoting *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)).

When the court considers other relevant factors, such as the availability of discovery, it similarly finds that the magistrate's denial was appropriate. See *Caputo*, 288 F. Supp. 2d at 926 (stating that "[i]n determining whether the indictment sufficiently apprises the defendant of the charges, a court can consider the charges' complexity, the indictment's clarity, and the availability of discovery"). The government is complying with the open file policy set forth in Crim. L. R. 16.1, thereby giving the defendants full access to the government's information. "[A] bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991) (quoting 1 C. Wright, Fed. Prac. & Proc. Crim. 2d § 129 pp. 436-38 (1982)).

Butler places significant emphasis on the aggregate effect of denying both his motion for the disclosure of confidential informants and his motion for a bill of particulars; however, the court finds his arguments without merit. As noted in the discussion above, Butler's motion for disclosure of the informants was properly denied because Butler did not meet the burden necessary to outweigh the government's and public's interest in protecting the confidentiality of the informers. More importantly, the court did not find that disclosure of the informants would bear any relevant or necessary information in relation to Butler's theory of defense, his attempt to disprove he was a member of a conspiracy. Additionally, Butler has not shown that an order for a bill of particulars is necessary, either. While the court appreciates that these coupled denials limit the information that Butler will receive about his case, each motion was properly considered and the denials do not impinge on Butler's constitutional rights, nor on his ability to conduct a defense. This is particularly true when the government has said that it will turn over, within 30 days of trial, all of the witnesses they intend to call; in addition to the discovery that Butler will receive under the local rule and "open file" policy.

### III. Motion to Suppress

Butler moved to suppress all evidence seized from a May 17, 2005 search of the residence located at 3369 North Palmer Street, Milwaukee, Wisconsin. Magistrate Callahan recommended that his motion be denied, and Butler now objects. The parties submitted stipulated facts regarding the May 17, 2005 search of 3369 North Palmer Street. The following is a brief summary of the stipulated and agreed information submitted by the parties.

On May 17, 2005, Milwaukee police were investigating a tip they received from a confidential informant that the person in control of the residence at 3369 North Palmer Street in Milwaukee, Wisconsin was operating a heroin house. The informant stated they believed this residence to be a heroin house because they had recently observed a large quantity of heroin, both packaged and unpackaged, inside the residence. Upon receiving this information, officers of the Milwaukee Police Department went to the Palmer Street residence at approximately 2:05 p.m. on the same day.

When the officers arrived at the residence, they surrounded the home and were positioned at various locations around the house. Officer Thomas Obergon was stationed at the rear and Officer Michael Lutz pounded loudly on the front door, displayed his badge, and demanded that the occupants open the door. After Lutz began knocking on the door, Obergon observed a black male throw a sandwich bag, containing a powdery tan substance, out of the window. Obergon picked up the sandwich bag and examined it; he believed the substances to be consistent with heroin. Obergon communicated this to the officers in the front of the residence.

After the sandwich bag was thrown out of the window, the officers believed that the individuals inside may be destroying evidence and therefore made a warrantless entry through the front door and conducted a protective sweep of the premises. All persons found in the residence during the protective sweep, including Butler, were ordered to the floor and detained.

While the individuals were detained on the scene, the officers called in a vice-squad officer Dean Newport to conduct a field test on the substance found in the sandwich bag. Newport's test indicated that the substance was positive for heroin. With this information, Lutz went to the Milwaukee County District Attorney's Office and drafted an application and affidavit for a search warrant of 3369 North Palmer Street. A warrant was issued the same day, and Lutz returned to the Palmer Street address to search the premises. During the search, numerous items of evidentiary value were recovered, including bindles of heroin, drug packaging materials, $349.00 from the person of Butler, and Butler's cell phone.

Butler's original motion argued these items must be suppressed because the government made a warrantless entry into the home, and the subsequent warrant was secured through the use of illegally seized evidence. In support of Butler's motion, he argues that (1) the officers stationed in the backyard of the residence unconstitutionally invaded the curtilage of the home, (2) the officers did not have probable cause to arrest the occupants of the residence; and (3) no exigent circumstances were present such that the officers could make a warrantless entry into the home. The recommendation resolved each of these issues against Butler, and in his objection he now states that "[t]he thrust of [his] argument was that the police invaded the curtilage of the home when they went into the backyard (i.e., surrounded the home) during a purportedly consensual 'knock and talk' with the residents of the home." (Butler's Obj. 2.) Butler also argues that the recommendation improperly placed burdens of proof upon him and not the government; that the

officers acted unreasonably during the "knock and talk"; that the officers had no authority to detain the individuals within the home; and also that the officers manufactured exigent circumstances by the manner in which they conducted the "knock and talk".

Turning to Butler's first argument, that the officers impermissibly invaded the curtilage area of the home when they entered the backyard, the court finds his argument to be without merit. The Supreme Court has held that Fourth Amendment protections extend to the curtilage of one's home. *United States v. Oliver*, 466 U.S. 170, 180 (1984). That is, individuals enjoy a reasonable expectation of privacy within the areas that immediately surround the home. *Id.* at 178. Under certain circumstances, one's backyard may be considered a part of the home's curtilage. *See United States v. Frank*, 291 F.3d 945, 952 (7th Cir. 2002).

However, when the court considers Butler's arguments on the merits, it finds that no constitutional violation occurred when the officers entered the backyard of the duplex. First, it appears that the backyard in question was a common area and not entitled to Butler's use alone. Thus, it is inconsistent with Seventh Circuit holdings and Fourth Amendment jurisprudence to find that Butler had an expectation of privacy within the backyard. *See United States v. Concepcion,* 942 F.2d 1170, 1172 (7th Cir. 1992) (holding "[the defendant] could not assert an expectation of privacy in the common area . . . because the other five tenants sharing the same entrance used the space and could admit as many guests as they pleased"). Furthermore, contrary to Butler's arguments, the burden is upon him to establish that

the area in question was in fact curtilage. *See United States v. Thompson*, 139 F. App'x 724 (7th Cir. 2005) (holding that the defendant "was required to show that [the area] is 'so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection'") (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987).

The court also finds that the recommendation did not improperly shift any burden to Butler. Both the government and Butler agreed that Butler was an overnight guest at the residence and therefore has standing to challenge the search. Butler argues that this determination should mean that "Butler's expectation of privacy in the backyard was not an issue at the motion." (Butler's Obj. 6.) This is incorrect; the undisputed issue relates only to whether Butler had standing to challenge the search at all, not *where* he held a legitimate expectation of privacy. And to this matter, the court finds that while Butler has standing to object to the search, he did not have a reasonable expectation of privacy in the backyard such that the officers' presence there violated his Fourth Amendment rights. In *Minnesota v. Olson*, 495 U.S. 91 (1990), the Supreme Court held that an overnight social guest had an expectation of privacy in the place he was staying. *Id.* at 100. However, the defendant has the burden of showing that he has a reasonable expectation of privacy in the area searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). As noted in the discussion above, the court finds that there can be no expectation of privacy, particularly for an overnight guest, in an area of the property (in Butler's case, the backyard) that was open to use by others. "A visitor's legitimate

expectation of privacy in the dwelling place (including the curtilage) does not necessarily extend to all areas of the dwelling." *United States v. Jenkins*, 426 F. Supp. 2d 336, 340 (E.D.N.C. 2006). "The areas in which the visitor or guest has a legitimate expectation of privacy are those where his subjective expectation is 'one that society is prepared to recognize as reasonable.'" *See id.* (quoting *Rakas*, 439 U.S. at 143-44 n. 12). Common sense dictates that a shared backyard would not fall within an area of privacy where an overnight guest could have an expectation of privacy.

Most importantly, however, the court finds that the officers had a legitimate reason to enter into the area, even assuming *arguendo* that Butler would be able to establish that the backyard was within the curtilage of the home and that he enjoyed a reasonable expectation of privacy there. As appears from the stipulated facts, the officers were investigating a tip they had received that the residence at 3369 North Palmer Street was a "heroin house," and their method of investigating was conducting a "knock and talk." Simply put, a "knock and talk" is a "procedure wherein officers approach a residence in which they suspect illegal activity is occurring, knock on the door, and then attempt to gain consent to enter." *United States v. Adeyeye,* 359 F.3d 457, 461 (7th Cir. 2004).

Butler criticizes the recommendation and argues that the police were unreasonable in their "knock and talk" tactics because (1) they impermissibly and illegitimately entered the back area of the residence when they had no authority to do so, in order to detain persons found in the residence; and (2) they manufactured

exigent circumstances and made a warrantless and illegitimate entry into the home. (Butler's Obj. 5-7.) Over Butler's objections, the court notes that the "knock and talk" form of investigation was reasonable, and the officers did not gain impermissible or illegitimate entry into the home as Butler suggests.

To begin, this circuit has noted that "knock and talks" are reasonable forms of police investigation, subject to certain constitutional limitations. *Adeyeye,* 359 at 461 (7th Cir. 2004) (approving of the "knock and talk" technique of investigation). The relevant preliminary Fourth Amendment inquiry for a "knock and talk" is whether a "reasonable person would feel free to terminate the encounter." *Id.* at 462. Turning to the instant case, the court finds that it's unlikely that the defendants would have felt free to terminate the encounter. The stipulated facts demonstrate that the officers came to the residence, surrounded the home, knocked on the doors, displayed their badges, and demanded that the occupants open the doors. (Stipulated Facts ¶¶ 3-4.) The officers' actions, particularly the demand that the occupants open the door, lead the court to conclude that a reasonable person would, more than likely, not feel at liberty to terminate the encounter or request that the officers leave. Thus, the court finds that the conduct of the officers in this case "conveyed the message that compliance with their requests was required," and therefore "transformed the situation from a consensual encounter into an investigatory stop." *See Adeyeye,* 359 F.3d at 462 (citing *United States v. Jerez*, 108 F.3d 684 (7th Cir.1997)).

However, the constitutional inquiry does not end there; upon a determination that the individuals did not feel free to terminate the encounter, the court must next consider whether the officers had reasonable suspicion to conduct the "investigatory stop" or "knock and talk." *See Adeyeye,* 359 F.3d at 462. "Reasonable suspicion" is "more than an inchoate and unparticularized suspicion or hunch," and determining whether or not reasonable suspicion existed involves examining the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 27 (1968)). The court once again turns to the stipulated facts and readily determines that there was reasonable suspicion for the officers to perform the "knock and talk" investigation. The facts state that the officers were investigating a tip, given that same day, that the persons in control of that residence were operating a heroin house. The informant gave facts that he or she personally observed large quantities of heroin within the home. (Stipulated Facts ¶ 1.) These facts, viewed in totality, form an adequate finding of reasonable suspicion, and the court finds that the officers did not violate the Fourth Amendment in conducting the "knock and talk."

Having determined that the officers acted within constitutional boundaries in performing the "knock and talk," the court moves to Butler's argument that the officers had no authority to detain the individuals in the home, and consequently, no authority to be present in the backyard. Butler's argument is premised upon the incorrect assumption that the officers would only have the authority to detain individuals in certain circumstances, such as the execution of a search warrant. (Butler's Obj. 7.) However, the Seventh Circuit has held "that police do not always

need probable cause to detain an individual when reasonable suspicion exists." *United States v. Lenoir,* 318 F.3d 725, 729 (7th Cir. 2003). Although reasonable suspicion is not precisely definable, *see United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006), the court is satisfied, pursuant to the discussion above, that officers had reasonable suspicion to conduct the "knock and talk" in the manner that they did. Furthermore, other circuits have recently held that officers' entry into the backyard or back entrances of homes is well-within the scope of what is appropriate during a "knock and talk" investigation. *See Hardesty v. Hamburg Tp.*, 461 F.3d 646, 654 (6th Cir. 2006) (holding that an "officers' decision to proceed around the house to seek out a back door was within the scope of the knock and talk investigative technique already recognized in this circuit").

Butler also argues that the officers created the exigent circumstances by knocking on the door and demanding that the occupants open the door. The court disagrees with Butler's characterization of these events; the exigency was created when the officers observed the occupants of the home throwing drugs out of the window. It's true that this followed the officer's knocking and announcing their presence, but from the statement of stipulated facts, the court does not find that the officer's actions were unreasonable in the way Butler contends, nor that the warrantless search was unconstitutional.

It is well-established that warrantless searches are presumptively unreasonable under Fourth Amendment jurisprudence. *Lenoir*, 318 F. 3d at 730. However, there are clearly delineated exceptions to this rule, such as exigent

-18-
Case 2:06-cr-00215-JPS   Filed 08/01/07   Page 18 of 20   Document 139

circumstances. *Id.* For "exigent circumstances" to be present, an officer must have a reasonable belief that a situation requires immediate attention and action, thereby making it impossible to secure a warrant. *Id.* One such exigent circumstance is when the officers reasonably believe that they must act immediately in order to prevent the destruction of evidence. *Id.*; *see also United States v. Robles*, 37 F.3d 1260, (7th Cir. 1994). "To determine whether this belief was reasonable, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Id.* It is clear that throwing drugs out of the window would undoubtedly lead the officers to conclude that evidence may be destroyed before a warrant could be secured. *See United States v. Acosta*, 965 F.2d 1248, 1254 (3rd Cir. 1992) (holding that "[e]xigent circumstances are not to be disregarded simply because the suspects chose to respond to the agents' lawful conduct by attempting to escape, destroy evidence, or engage in any other unlawful activity") (quoting *United States v. MacDonald*, 916 F.2d 766, 771 (2d Cir.1990)). Accordingly, the court is satisfied that exigent circumstances justified the officers' warrantless entry into the residence. The officers' announcement was lawful and they did not, as Butler argues, manufacture exigent circumstance.

Finally, although Butler did not specifically object to the magistrate's finding that the officers had authority to conduct a protective sweep and detain individuals found during the sweep, the court finds that the magistrate correctly applied the facts of this case to the holdings in *Maryland v. Buie*, 494 U.S. 325 (1990) and *United*

*States v. Brown*, 366 F.3d 456 (7th Cir. 2004). Thus, the court finds that the officers had authority to conduct a protective sweep of the residence and lawfully detained the individuals located therein.

Accordingly,

**IT IS ORDERED** that Magistrate Callahan's recommendation and order [Docket # 102] be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Butler's motion to compel disclosure, motion for a bill of particulars, and motion to suppress evidence [Docket # 66] be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin this __1st__ day of August, 2007.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge